**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **HASSAN SULEIMAN KHALAF,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN, Diamondback Detention Center, et al.,**<br><br>**Respondents.** | **Case No. CIV-26-1610-PRW** |

**REPORT AND RECOMMENDATION**

Petitioner Hassan Suleiman Khalaf is a noncitizen,[1] Lebanese native, and stateless Palestinian. He filed through counsel a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Patrick R. Wyrick referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule, Doc. 6, and on July 16, 2026, Respondents filed a Motion to Dismiss and Response to the Petition, Doc. 13. Petitioner replied to Respondents' Motion and Response, Doc. 14, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court deny Respondents' Motion

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

to Dismiss, grant the Petition, and order Respondents to release Petitioner from ICE custody subject to an appropriate Order of Supervision ("OOS").

## I. **Background**

Petitioner, a stateless man of Palestinian descent and native of Lebanon, lawfully entered the United States on or around January 22, 2022, on a B2 visa as a nonimmigrant "Visitor for Pleasure."[2] Doc. 14-1 at 3 (Petitioner's I-94 Record of Admission), 25 (Notice to Appear). Petitioner was permitted to remain in the United States for a temporary period not to exceed July 21, 2022. *Id.* On May 27, 2022, two months before his nonimmigrant visa was set to expire, Petitioner affirmatively filed an Application for Asylum and Withholding of Removal with the U.S. Citizenship and Immigration Service ("USCIS"). *Id.* at 6 (Receipt of Application for Asylum). On June 14, 2024, USCIS denied Petitioner's application and referred it to the Immigration Court. Doc. 14-1 at 22-24 (USCIS Referral Notice). The same day, ICE initiated removal proceedings against him by filing a Notice to Appear with the Immigration Court, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) in that, after admission as a nonimmigrant under the Immigration and

[2] Respondents allege Petitioner entered the United States unlawfully by lying on his nonimmigration visa application. Doc. 13 at 2. Respondents only cite to an order from the Northern District of Texas, which cites to a document outside the current record. *Id.* at 11; *see also* Doc. 13-1 at 11. An ICE report makes a similar allegation but does not refer to evidence it may have considered. Doc. 14-1 at 64. However, the travel documents provided by Petitioner do not support this allegation. *Id.* at 3-4, 25.

Nationality Act ("INA"), he remained in the United States longer than permitted. Doc. 14-1 at 25.

On August 27, 2024, Petitioner tried to purchase a firearm in Allen, Texas. *Id*. at 61 (Record of Deportable/Inadmissible Alien). Upon notice of Petitioner's attempt, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") notified ICE, who determined Petitioner was a risk to public safety and could not be trusted to abide by the conditions of his release. *Id*. at 64 (Report of ICE Investigation). On February 26, 2025, ICE detained Petitioner. *Id*. at 61. In or around May 2025, Petitioner was provided a bond hearing, where an Immigration Judge ("IJ") denied his request for bond. Doc. 13-1 at 2-3.

On September 4, 2025, an IJ granted Petitioner's application for withholding and deferral of removal pursuant to the Convention Against Torture ("CAT"). Doc. 13-2 at 2 (Decl. of Officer Aaron Nation, Enforcement and Removal Operations ("ERO")); Doc. 14 at 2. The IJ ordered Petitioner to be removed to any country other than Lebanon that would accept him. Doc. 13-2 at 2. Neither Petitioner nor ICE appealed the IJ's decision, making his removal order administratively final. *See* 8 C.F.R. § 1241.1. Petitioner remained in ICE custody after the IJ's order.

On October 22, 2025, a Palestine travel document request ("TDR") was mailed to Petitioner, who at that time was detained at the Bluebonnet Detention Facility in Anson, Texas. Doc. 13-2 at 2. On November 12, 2025, Petitioner was transferred to the Eden Detention Center in Eden, Texas. *Id*. On November 25, 2025, ICE ERO headquarters received Petitioner's completed TDR application. *Id.* On December 8, 2025, an updated

TDR application was sent to ERO headquarters. *Id.* On December 10, 2025, Petitioner's TDR application was forwarded to the Government of Israel. *Id.* In Officer Nation's declaration, he states that the Government of Israel "typically takes" "roughly three (3) to six (6) months to approve the travel request for transiting to the Palestinian territories." *Id.* On December 29, 2025, Petitioner's TDR application was submitted to a United Arab Emirates ("UAE") embassy in Washington, D.C. *Id.* On January 23, 2026, the UAE embassy rejected the TDR application and indicated the UAE would not issue travel documents to Petitioner. *Id.*; *see also* Doc. 14-1 at 67-68 (Email from UAE Embassy to Petitioner's Counsel).

In his declaration on July 9, 2026, Officer Nation further declares, "as of April 15, 2026, Khalaf is pending on ERO Headquarters' Third Country Removal list. ERO Headquarters and the United States Department of State are actively coordinating to remove Khalaf to a third country at this time." Doc. 13-2 at 3 (citation modified). Officer Nation further attests "the TDR with the Government of Israel is also currently pending at this time." *Id.*

**A. Prior habeas petition in Texas**

On December 18, 2025, Petitioner filed a petition for writ of habeas corpus with the Northern District of Texas ("Texas Court"). Doc. 13-1 at 4 (N.D. Tex. Order denying habeas relief). In that petition, Petitioner claimed (1) there was no significant likelihood of his removal in the reasonably foreseeable future; (2) other substantive and procedural due process considerations demanded his release; and (3) his detention violates the

Suspension Clause. *Id*. at 1. On June 24, 2026, the Texas Court denied habeas relief to Petitioner. *See generally* Doc. 13-1. The Texas Court held the Government had shown a significant likelihood Petitioner would be removed to a third country in the reasonably foreseeable future, primarily relying on

> (1) his "actively pending" travel application,
>
> (2) evidence "the U.S. government has successfully removed individuals of Palestinian descent to Gaza or the West Bank in recent months" through Israel, and
>
> (3) a declaration by Officer Nation that (a) ERO and the U.S. Department of State were working towards Petitioner's removal and (b) the current conflict between the United States and Iran would not affect him because the countries entered a ceasefire.

*Id*. at 12-14.

**B. Current Petition**

Before the Texas Court's order, Petitioner was transferred to the Diamondback Correctional Facility in Watonga, Oklahoma. Doc. 14 at 3. On June 29, 2026, Petitioner, proceeding pro se, filed the instant Petition. Pet. at 1. Respondents filed a Motion to Dismiss and a Response. Doc. 13. Petitioner, through counsel, filed a Reply. Doc. 14. On September 7, 2026, Petitioner filed a Notice of Recent Developments to his case, Doc. 15, and Respondents filed a response, Doc. 16.

Petitioner asserts three claims in his Petition:

- **Count I: Violation of Due Process.** Petitioner alleges, under *Zadvydas v. Davis*, 533 U.S. 678 (2001), he has been detained beyond a presumptively reasonable period of six months after his final administrative removal order.

Pet. at 6. At the time of filing his Petition, he had been detained for approximately 225 days. *Id.*

- **Count II: CAT Grant over Lebanon.** Petitioner alleges ICE has applied for travel documents to Israel and alleges the application will never be approved because he was not born in Palestine and does not have an Israeli identification card. *Id.*

- **Count III: Lack of Criminal Conviction.** Petitioner alleges that he has no criminal history anywhere in the world. *Id.* at 6.

Petitioner asks the Court to order his immediate release from detention, issue a temporary restraining order, and enjoin ICE from re-detaining him again. *Id.* at 7.

Recent filings by the parties indicate Petitioner remains in ICE custody. Docs. 15-16. And Respondents have not advised of any transfer or removal. *See* Doc. 6 at 2 (ordering Respondents to advise the Court of Petitioner's transfer and removal).

## II. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## III. Analysis

### A. Petitioner has not engaged in an abuse of the writ.

Respondents allege Petitioner's current Petition constitutes an "abuse of the writ" based on his earlier petition that the Texas Court denied. Doc. 13 at 4-6. Respondents

allege Petitioner raises an identical claim in both petitions—that there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents also argue Petitioner (1) fails to demonstrate a material change in circumstances between each petition, and (2) attempts to lie to the Court by indicating in the current Petition that he has not raised any these claims before. *Id.*; *see also* Pet. at 5.

"Where . . . a petitioner files multiple § 2241 petitions, the later-filed cases generally proceed in one of two ways." *Salib v. Figueroa*, No. CIV-26-1250-D, 2026 WL 2393174, at *1 (W.D. Okla. Aug. 17, 2026) (quoting *Lazare v. De Anda-Ybarra*, No. CIV-26-808, 2026 WL 2071154, at *1 (D.N.M. July 17, 2026)). "If the first § 2241 case is still pending, the later filed petition may be dismissed as duplicative and without prejudice" and "[t]he petitioner is then free to continue prosecuting claims in his . . . existing § 2241 case." *Id.; see also Lazare*, 2026 WL 2071154, at *1 (collecting cases dismissing duplicate § 2241 immigration petitions).

"On the other hand, if the first § 2241 was denied on the merits and final judgment has been entered, the Court may deny the second petition as an abuse of the writ." *Salib*, 2026 WL 2393174, at *1 (citation modified); *see also Rabadanov v. Figueroa*, No. CIV-26-1441-J, Doc. 15 at 2-4 (W.D. Okla. Sept. 29, 2026) (dismissing immigration petition based on the abuse of the writ doctrine). The "abuse of the writ" doctrine developed in case law and is similar to the statutory bar on successive habeas petitions under 28 U.S.C. §§ 2254 and 2255." *Salib*, 2026 WL 2393174, at *1 (citing *Stanko v. Davis,* 617 F.3d 1262, 1268 (10th Cir. 2010)); *see also Lazare,* 2026 WL 2071154, at *2 ("The abuse of the

writ doctrine permits courts to dismiss successive § 2241 claims that were raised in a prior petition as well as new 'claims [that] could have been raised in an earlier [petition] . . . but were not.'" (quoting *Stanko,* 617 F.3d at 1270)).

"Once the Court identifies claims that were raised in a prior petition (or could have been raised), '[t]he burden to disprove abuse . . . becomes petitioner's.'" *Lazare,* 2026 WL 2071154, at *2 (quoting *McCleskey v. Zant,* 499 U.S. 467, 488 (1991)). To meet their burden, a petitioner generally must either show cause and prejudice or a "fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* (quoting *McCleskey,* 499 U.S. at 494-95).

Here, the undersigned concludes Petitioner has not engaged in an abuse of the writ. First, Petitioner's pending claim about the *current* length of his post-removal-order detention and *current* status of Respondents' efforts to remove him could not have been raised in his initial petition. More than three months have passed since the Texas Court denied Petitioner's petition on June 24, 2026. Doc. 13-1 at 15. At that time, Petitioner had been detained for approximately nine months after his order of removal. The Texas Court placed significant weight on the time Petitioner had waited for the Government of Israel to respond to Respondents' TRO application. Doc. 13-1 at 14. Based on an ERO officer's declaration, Israel usually takes roughly three to six months to approve travel requests for transiting to the Palestinian territories. *Id.*; *see also* Doc. 13-2 at 2. As of June 2026, only seven months had passed since ICE sent its TDR application, and the Texas Court

concluded the one-month delay from the estimated time for approval did not demonstrate Petitioner's removal was not likely in the reasonably foreseeable future. Doc. 13-1 at 14.

Now it is more than one year since Petitioner's final removal order, nearly ten months since ICE submitted its TDR application to Israel, and approximately four months past Israel's estimated three-to-six-month approval period. The record lacks any evidence that ICE has heard from Israel or made any progress on Petitioner's removal to Israel or any other country since Officer Nation's declaration on July 9, 2026. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. As Petitioner is still detained without record evidence of any progress towards his removal, the timeframe for his removal in the reasonably foreseeable future has shrunk. *Id.* In sum, Petitioner could not have raised such argument with the Texas Court about the *current* length of his detention and apparent inaction by Respondents. *Stanko*, 617 F.3d at 1270. These considerations support the undersigned's recommendation that Petitioner has not engaged in an abuse of the writ.

Another district court recently addressed second petitions under *Zadvydas* and concluded there was no abuse of the writ based on the fact-specific nature of these claims:

> Thus, even though [petitioner] asserts the same claims of detention in violation of *Zadvydas* in both of his Petitions, the new facts related to his longer detention at issue in his Second Petition mean that the current *Zadvydas* claim had not arisen at the time of his First Petition. If the Court accepted the Federal Respondent's argument, then an alien who challenged his detention too soon after being ordered removed could never challenge it again, even as the duration of detention further exceeded the 6-month

> presumptive constitutional limit set out in *Zadvydas*. The Court declines to accept such a result.

*Herdem v. Lyons*, No. 26CV3158, 2026 WL 2234435, at *5 (D. Neb. Aug. 4, 2026) (citation modified); *see also Gonzalez v. Warden, Ndcs Work Ethic Camp*, No. 26CV293, 2026 WL 2124076, at *3 (D. Neb. July 23, 2026) (concluding "the abuse of the writ doctrine does not apply" when a petitioner "is not re-raising claims he made or could have made in his previous petition—instead, he is challenging his continued detention in light of the passage of time and the fact he has not been removed since the Court denied his first petition" under *Zadvydas*). *Cf. Soto Vilchez v. Blanche*, No. 26-3155-JWL, 2026 WL 1978620, at *1 (D. Kan. July 9, 2026) (concluding in the § 1226(c) context that when a petitioner's claim "turns on the length and circumstances of the detention, which have changed since the first habeas action was pending," petitioner has not abused the writ by filing a later petition).

Second, the "abuse of the writ" doctrine was to prevent petitioners with baseless or repetitive claims from burdening the judicial system and forcing courts to engage in unnecessary repetitive review. *See Stanko*, 617 F.3d at 1269. The Petition does not fall within these categories. Petitioner's claim is not baseless or, as Respondents allege, "bare-bones." Doc. 13 at 3,7. His claim is based in part on his post-removal detention, which has only grown more prolonged since his original petition. Petitioner's claim is also not repetitive, as his prolonged detention beyond June 2026, with no indication ICE has taken meaningful steps towards his removal, is a new and distinct issue. Nor has Petitioner

engaged in intentional forum-shopping. He filed the Petition in this Court because ICE moved him into the state. Petitioner also filed his initial Petition without counsel. Though he did not initially disclose his prior claims in his current Petition, once he was represented by counsel, Petitioner clarified and acknowledged his prior petition with the Texas Court. Doc. 14 at 5-7. The undersigned is not persuaded that Petitioner has attempted intentionally to deceive the Court.

Finally, though decisions and orders from other districts and circuits may serve as persuasive authority, "a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation modified). This Court is not bound by the analysis or conclusion made by the Texas Court. In many ways, this case is like *Alsheref v. Mullin*, No. CIV-26-89-G, 2026 WL 2333813 (W.D. Okla. Aug. 12, 2026), where Judge Goodwin granted habeas relief to a Palestinian refugee whose earlier habeas petition had been denied by the Northern District of Texas when the petitioner was detained there. Moreso, Petitioner's circumstances have changed under the applicable *Zadvydas* analysis such that aspects of the Texas Court's reasoning must be reevaluated based on the passage of time and assessment of Respondents' status of removal efforts. For example, the Texas Court denied Petitioner's petition, in part, because there had only been a one-month delay from Israel's estimated time to approve his TDR. Doc.

13-1 at 14. However, it has now been approximately four months past the estimated timeframe to hear from Israel, with no update as to progress.[3]

The undersigned recommends that the Court conclude Petitioner has not engaged in an abuse of the writ and consider his Petition on the merits. Therefore, the Court should deny Respondents' Motion to Dismiss, Doc. 13, and decide the merits of the Petition.[4]

### B. Petitioner's continued detention violates his Fifth Amendment Due Process rights under *Zadvydas*.

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Under this statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6).

---

[3] The Texas Court also considered, at the time of its decision, that the United States and Iran had formed a ceasefire. Doc. 13-1 at 13-14. This ceasefire ended on July 9, 2026, and no evidence in the record indicates another ceasefire has been enacted. Doc. 14 at 2; *see also* CNN, U.S.-Iran ceasefire crumbles as fresh strikes rock Middle East, at https://www.cnn.com/2026/07/09/world/live-news/iran-war-trump (last accessed Oct. 6, 2026). Because record evidence does not clarify how any conflict between the United States and Iran impedes removals to Gaza or the West Bank, the undersigned assigns little weight to this consideration.

[4] Respondents included a substantive response in the alternative to Petitioner's claims. Doc. 13 at 7-9. Accordingly, no further briefing is necessary for disposition of the Petition.

However, detention of a noncitizen subject to a final order of removal may not be indefinite, and the Supreme Court set the "presumptively reasonable period of detention" under § 1231(a)(6) at six months. *Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Therefore, to obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). If a petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Here, the Court should find Petitioner has shown his continued detention violates his due process rights under *Zadvydas*.

**1. Petitioner has met his initial burden.**

To satisfy his burden under *Zadvydas*, a petitioner "must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his

removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024) (R&R), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1267-68 (W.D. Okla. 2026) (confirming Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal") (citation modified). Courts also consider "whether the mere passage of time is sufficient, whether the petitioner's case fits within certain defined circumstances, or whether the petitioner is similarly situated to the two petitioners in *Zadvydas*." *Khaliq*, 828 F. Supp. 3d at 1267-68 (citation modified). A petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. Rather, a petitioner need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701.

The undersigned finds Petitioner has met his initial burden under *Zadvydas*. He is not a citizen of Israel, Palestine, or the UAE. He does not hold a passport to any of these countries or territories and does not hold any travel documents that would allow him to travel to these areas. Further, no record evidence shows, since April 15, 2026, that ICE has made meaningful progress in securing Petitioner's removal to these territories or any other third country. *See* Doc. 13-2 at 3; *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1184 (E.D. Cal. 2025) (finding petitioner met his burden when he alleged respondents "failed to provide notice of any progress that has been made over the past seven months to effectuate [Petitioner's] removal following his award of withholding of removal").

Further, as Respondents acknowledge, the UAE in January 2026 advised it will not issue travel documents or accept Petitioner into its territory. Doc. 13-2 at 3; *see also* Doc. 14-1 at 67-68. No record evidence shows ICE has initiated any direct communications with Gaza, the West Bank, or Palestinian authorities. *Khaliq*, 828 F. Supp. 3d at 1269 (finding petitioner met burden when "ICE claim[ed] it [was] going to pursue travel documents to Palestine, [but] no communications with that country [had] yet been initiated"). Aside from these territories, ICE has not identified a third country that could accept Petitioner. *Trejo v. Warden of ERO El Paso E. Mont.*, No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding petitioner met his burden by showing he could not be removed to his country of citizenship, "he is not a citizen of any other country, and . . . ICE has not identified a third country that will accept him").

Judges in this District and elsewhere have recognized a petitioner may satisfy their burden under *Zadvydas* when (1) the petitioner "previously applied for travel documents" and was denied and (2) respondents had "not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner." *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025); *see also Khaliq*, 828 F. Supp. 3d at 1271 (finding petitioner showed good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future where efforts to remove him to his country of citizenship had been "sporadic" with no definitive response from that country); *Hernandez-Perez v. U.S. Immigr. & Customs Enf't*, No. CIV-25-1081-J, 2026 WL 49710, at *1 (W.D. Okla. Jan. 7, 2026) (finding petitioner

met his burden to show no significant likelihood of removal in the reasonably foreseeable future where third countries had either denied or not responded to ICE's travel document requests and there had been "no updates on the removal efforts" from ERO); *Gomez v. Mattos*, No. 25-CV-00975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him).

Respondents allege Petitioner fails to satisfy his burden because he only offers "unsupported statements" as to why his removal is not likely in the reasonably foreseeable future. Doc. 13 at 7. The undersigned disagrees. The factors considered above are based on Petitioner's allegations and corroborated by Respondents' own filings. Also, "it is not the Petitioner's fault if there are no ICE activities or documents to reference or file because ICE has not made any meaningful progress." *Hanifi v. Figueroa*, No. CIV-26-1229-D, 2026 WL 2620554, at *5 (W.D. Okla. Sep. 4, 2026) (R&R). When a petitioner asserts ICE has failed to make significant progress, and Respondents do not rebut such an assertion with evidence, petitioner's allegations of no progress stand on their own. *Id.*; *see also Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1495209, at *2 (W.D. Okla. May 28, 2026) ("Such prolonged silence [of nearly six months since a TDR was made] reinforces that removal is not significantly likely in the reasonably foreseeable future.").

The undersigned concludes Petitioner has established good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701-02. Therefore, the Court should find Petitioner satisfied his initial burden.[5]

**2. Respondents have not met their burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. The undersigned finds Respondents have failed to do so. Respondents argue, even if the Court finds Petitioner met his burden, that Officer Nation's declaration rebuts any showing by Petitioner that his removal is not significantly likely in the reasonably foreseeable future. Doc. 13 at 8. On July 9, 2026, Officer Nation attested that a request to the Government of Israel remains pending. Doc. 13-2 at 3. He also attested that as of April 15, 2026, Petitioner is pending on ERO's Third Country Removal list, and ERO and the U.S. Department of State are "actively coordinating" to remove Petitioner to a third country. *Id.*

[5] Additionally, Petitioner's removal to Israel would likely be considered a removal to a third country. If so, he "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Alnajjar v. GEO Grp., Inc.,* No. 25-CV-0822, 2025 WL 3853217, at *5 (W.D. Tex. Dec. 23, 2025) (citation modified); *see also* 8 U.S.C. § 1231(b) (outlining countries where noncitizens can be removed including credible fear determinations before removal); *accord Fadwa v. Lyons*, No. 25-CV-03660, 2025 WL 3525026, at *5 (D. Colo. Dec. 9, 2025) (analyzing where ICE could remove a Palestinian national under § 1231(b)(2)). Neither party has briefed this issue. However, such lengthy proceedings, if initiated by Petitioner, would likely delay his removal to Israel, Palestine, or any other third country, further supporting a finding that his removal is not significantly likely in the reasonably foreseeable future.

Respondents fail to establish sufficient evidence to rebut Petitioner's showing. Officer Nation's statements as to Petitioner's pending status on ERO's Third Country Removal List and efforts to remove him to a third country are from April 15, 2026.[6] *Id*. Even in July 2026, Respondents had no update as to ERO's transmission of Petitioner's TDR packet to the Government of Israel on December 10, 2025. *Id*. Now nearly three months have passed since Officer Nation's declaration, and the record lacks any update or progress towards Petitioner's removal. "Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention." *Lee v. Crawford*, No. 25CV535, 2026 WL 745263, at *4 (E.D. Va. Feb. 27, 2026) (R&R), *adopted*, 2026 WL 738591 (E.D. Va. Mar. 16, 2026). And "the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 828 F. Supp. 3d at 1271; *Douglas v. Baker*, 812 F. Supp. 3d 525, 530 (D. Md. 2025) (finding passage of time and "the absence of any evidence that the government has used that time to advance efforts to remove" a petitioner demonstrate detention is no longer authorized by *Zadvydas*).

Respondents' failure to submit evidence of any response from Israel or

[6] Officer Nation's declaration, though signed on July 9, 2026, indicates it was written for the Texas Court. Doc. 13-2 at 1. It is unclear whether Respondents took Officer Nation's prior declaration for the Texas Court verbatim or whether they provided the Court with a new, updated declaration. Either way, the dated information—with no update since early July—supports the conclusion that Respondents have failed to show Petitioner's removal is significantly likely in the reasonably foreseeable future.

communications with other third countries since July further supports a conclusion they have failed to rebut the presumption. *See Khaliq*, 828 F. Supp. 3d at 1271 (grant of habeas relief by Chief Judge Palk after finding "prior efforts by ICE to remove" petitioner to his home country "have been sporadic and unsuccessful," and "the record lacks any evidence to show that removal of aliens similarly situated to" petitioner back to his home country "has been successful," without any evidence of considerations for third country removal (citation modified)); *Momennia*, 2025 WL 3006045, at *1 (grant of habeas relief by Judge Jones after finding petitioner's previous application for travel documents to Iran was denied and respondents "have not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of" the petitioner); *see also Shamma v. Raycraft*, No. 26-CV-492, 2026 WL 598451, at *3 (W.D. Mich. Mar. 4, 2026) (noting ICE's failure to show Israel responded to a TDR request that had been pending for six months demonstrates that respondents were not "any closer to removing Petitioner than they were in August 2025"); *Fadwa*, 2025 WL 3525026, at *6 (finding respondents did not meet their burden to show removal efforts are likely to succeed where ICE followed up with Israel four times with no response, and ICE had not provided details on a concrete plan to get petitioner to the West Bank through Israel).

Nor have Respondents submitted any evidence to corroborate or update Officer Nation's claim they submitted a TDR packet to Israel or that ERO and the Department of State are working towards securing Petitioner's removal. *See Khaliq*, 828 F. Supp. 3d at 1270 (finding respondents failed to rebut the presumption of removal because they failed

to provide objective evidence to support Officer Nation's statements); *Momennia*, 2025 WL 3011896, at *10 ("[M]ere intent to find a third country," absent "specific communications between the United States and an identified country" is "too speculative to permit indefinite detention").

The Texas Court also noted the United States government has successfully removed individuals of Palestinian descent to Gaza or the West Bank in recent months. Doc. 13-1 at 14. Yet Judges in this District have concluded the fact that a country may have accepted some persons for repatriation does not alone mean respondents have met their burden as to a specific petitioner. *See, e.g.*, *Alsheref*, 2026 WL 2333813, at *5 (finding "Respondents' reference to general increase in the 'Government of Israel's willingness to accept Palestinians' for repatriation does not suffice to show that Respondents made a specific determination . . . that Petitioner may be removed . . . in the reasonable foreseeable future") (internal citations omitted); *Hanifi*, 2026 WL 2620554, at *5 (finding general statistics insufficient to rebut a petitioner's presumption because such figures do not "provide . . . evidence of progress . . . made towards removal of Petitioner himself") (internal citations omitted); *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *5 (W.D. Okla. Mar. 6, 2026) ("[A] general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years . . . does not satisfy the . . . determination of a significant likelihood that the alien may be removed.") (internal quotation marks omitted); *see also Shamma*, 2026 WL 598451, at *3 (concluding the "general, speculative statement" by respondents that "Israel will take stateless subjects and

transfer to Palestine via the West Bank" was not sufficient to meet their burden where respondents do not indicate Israel had agreed to take action for the petitioner and even assuming it had, respondents had not provided any timeline for his removal).

Considering all these factors, the undersigned finds Respondents have failed to rebut Petitioner's showing. The Court should find Petitioner is entitled under *Zadvydas* to habeas relief and immediate release from custody, subject to an appropriate Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).

**C. The Court should decline to address Petitioner's remaining claims for relief.**

In Count II, Petitioner alleges he was granted relief from an IJ and ICE failed to meaningfully demonstrate that he could be removed to Israel or another third country. Pet. at 6. The Court need not address this claim, given its substantive similarities to Count I of the Petition, if the Court adopts the recommendation for Petitioner's release. As to Count III, Petitioner notes he has no criminal history. *Id*. However, this fact does not relate to whether his detention is lawful under *Zadvydas* and applicable law.

## IV. <u>Recommendation and Notice of Right to Object</u>

For these reasons, the undersigned recommends that the Court (1) **DENY** Respondents' Motion to Dismiss, Doc. 13, (2) **GRANT** the Petition, Doc. 1, for habeas relief, and (3) order Petitioner's immediate release from ICE custody, subject to an appropriate Order of Supervision. The undersigned further recommends the Court order

Respondents to certify compliance by filing a status report within five business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **October 14, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **October 19, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 6th day of October, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE